This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Monte D. Pitts has appealed from a judgment of conviction and sentence from the Summit County Court of Common Pleas for failing to comply with an order or signal of a police officer and multiple drug-related offenses. This Court affirms in part, reverses in part, and remands for further proceedings.
 I
{¶ 2} In January 2001, members of the Akron Police Department's Street Narcotics Uniform Detail ("SNUD") were monitoring activities at an apartment near Peerless and Bellevue Avenues. Based on activity he observed at the apartment, a SNUD detective radioed to nearby uniformed detectives and instructed them to conduct an investigative stop of a white Monte Carlo that had just left the apartment. Detectives in marked patrol cars positioned themselves behind the automobile, and the lead patrol car activated its emergency lights and sirens. Appellant, the driver of the Monte Carlo, did not immediately stop the car, but cut through parking lots of several businesses before finally bringing the vehicle to a stop.
{¶ 3} When the car came to a halt, a passenger jumped out of the vehicle and fled on foot. One of the patrol cars pursued the fleeing passenger, and a detective from a second patrol car apprehended Appellant. The detective placed Appellant under arrest, handcuffed him, and discovered a plastic bag containing crack cocaine in Appellant's coat pocket.
{¶ 4} Approximately ten days later, the Summit County Grand Jury returned a three-count indictment charging Appellant with one count of possession of crack cocaine in an amount exceeding one hundred grams in weight, in violation of R.C. 2925.11(A); one count of failure to comply with an order or signal of a police officer, in violation of R.C.2921.331(B); and one count of possession of marijuana, in violation of R.C. 2925.11(A). The grand jury later amended count one of the indictment to include a major drug offender specification, pursuant to R.C. 2941.1410. Appellant appeared at an arraignment hearing and entered a plea of not guilty to all counts of the indictment. The trial court continued the $100,000, ten percent appearance bond set by the municipal court, and released Appellant.
{¶ 5} Appellant subsequently filed a motion to suppress the evidence against him seized at the time of his arrest. Appellant contended that the police lacked a reasonable suspicion that Appellant was engaged in criminal activity at the time they initiated the traffic stop, and that the stop therefore violated his state and federal constitutional rights. Appellant argued that the evidence collected as a result of the unlawful stop was tainted by the constitutional violations, and had to be excluded from any trial of Appellant on the charges of the indictment.
{¶ 6} After a hearing, the trial court denied Appellant's motion and scheduled the matter for trial. On the trial date, Appellant appeared and withdrew his plea of not guilty. Appellant entered a plea of guilty to the charge of possession of cocaine, and the court dismissed counts two and three of the indictment as well as the major drug offender specification attached to count one. Prior to sentencing, however, Appellant moved to withdraw the guilty plea. On June 1, 2001, the trial court granted Appellant's motion, reinstated all counts and the specification of the indictment, and again set the matter for trial.
{¶ 7} On the date scheduled for trial, however, Appellant failed to appear in court, and the trial court issued a capias warrant for Appellant's arrest. Two and one-half weeks later, Appellant was brought before the court and a new trial date was set for October 9, 2001. The court increased the amount of the ten percent appearance bond to $250,000, and released Appellant. On October 9, Appellant again failed to appear before the court, and a second capias warrant was issued.
{¶ 8} On November 2, 2001, Appellant was apprehended in a separate incident arising from surveillance conducted by SNUD detectives at an address on Nathan Street. On that occasion, officers conducted a traffic stop of a vehicle that left the Nathan Street address in which Appellant was a passenger in the back seat. Officers arrested Appellant and the driver of the car, and removed a six-year-old passenger from the front seat of the vehicle. Police then recovered cocaine from inside the vehicle, and found marijuana and over $1,200 cash on Appellant's person.
{¶ 9} Approximately two weeks later, the Summit County Grand Jury indicted Appellant on one count of trafficking in cocaine, in violation of 2925.03(A)(2); one count of possession of cocaine, in violation of R.C. 2925.11(A); one count of endangering children, in violation of R.C.2919.22(A); and one count of possession of marijuana, in violation of R.C. 2925.11(A). Appellant entered a plea of not guilty to all counts of the indictment.
{¶ 10} The two indictments against Appellant were tried together beginning on January 14, 2002. With respect to the first indictment, the jury found Appellant guilty of possession of crack cocaine in an amount exceeding one hundred grams, and guilty of failure to comply with a signal or order of a police officer. The trial court found Appellant guilty of possession of marijuana, and declared Appellant a major drug offender. The court sentenced Appellant to ten years in prison and a $25,000 fine for possession of crack cocaine, one hundred eighty days for failure to comply, to be served concurrently with the ten-year sentence for possession, and a $100 fine for possession of marijuana.
{¶ 11} Of the charges in the second indictment, the jury found Appellant guilty of trafficking in cocaine, possession of cocaine, and possession of marijuana. The trial court directed a verdict of acquittal on the charge of endangering children. The court then sentenced Appellant to a prison term of four years and a $25,000 fine for trafficking in cocaine, seventeen months for possession, to be served concurrently with the four-year sentence for trafficking, and a $100 fine for possession of marijuana. The court ordered that Appellant serve his sentences consecutively for the convictions under each indictment. Appellant timely appealed from his conviction and sentence, but this Court dismissed Appellant's original appeal for failure to comply with Loc.R. 2(C) and failure to file a complete docketing statement. The present appeal is before us pursuant to our order granting Appellant's motion to reopen, having determined that Appellant's first appellate counsel was ineffective. Appellant has asserted nine assignments of error, certain of which we have consolidated to facilitate review.
 I Assignment of Error Number One {¶ 12} "[APPELLANT] WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED HIS MOTION TO SUPPRESS."
{¶ 13} In his first assignment of error, Appellant has argued that the trial court erred in denying his motion to suppress the evidence obtained during the first traffic stop, when he drove away from the apartment in a white Monte Carlo. Appellant has contended that the police had no reasonable suspicion that he was engaged in criminal activity at the time of the traffic stop, and the stop was therefore in violation of his constitutional rights. According to Appellant, the trial court should have suppressed all evidence obtained as a result of the unlawful stop.
{¶ 14} An appellate court's review of a ruling on a motion to suppress evidence presents a mixed question of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332. Whether an officer has probable cause or reasonable suspicion to make a warrantless arrest is reviewed by an appellate court de novo. State v. Bing (1999), 134 Ohio App.3d 444,448, citing Ornelas v. United States (1996), 517 U.S. 690, 699,116 S.Ct. 1657, 134 L.Ed.2d 911. However, "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Hopfer (1996), 112 Ohio App.3d 521,548, appeal not allowed (1996), 77 Ohio St.3d 1488, quoting State v.Venham (1994), 96 Ohio App.3d 649, 653. Accordingly, "[a]n appellate court must review the trial court's findings of historical fact only for clear error, giving due weight to inferences drawn from those facts by the trial court. The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v. Russell
(1998), 127 Ohio App.3d 414, 416, citing Ornelas, supra.
{¶ 15} The Fourth Amendment to the United States Constitution guarantees certain protections: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" Section 14, Article I of the Ohio Constitution contains language nearly identical to that of theFourth Amendment, and similarly prohibits unreasonable searches and seizures. See State v. Kinney (1998), 83 Ohio St.3d 85, 87, certiorari denied (1999), 526 U.S. 1007, 119 S.Ct. 1148, 143 L.Ed.2d 214. The exclusion of evidence obtained in violation of these constitutional guarantees is an essential part of the Fourth Amendment. State v. Jones (2000),88 Ohio St.3d 430, 434; Mapp v. Ohio (1961), 367 U.S. 643, 655-656,81 S.Ct. 1684, 6 L.Ed.2d 1081.
{¶ 16} A traffic stop constitutes a seizure within the meaning of the Fourth Amendment. Whren v. United States (1996), 517 U.S. 806,809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89. As such, "[a] law enforcement officer must have a reasonable, articulable suspicion that a person is or has been engaged in criminal activity before he is justified in stopping a vehicle." State v. VanScoder (1994), 92 Ohio App.3d 853, 855, citingTerry v. Ohio (1968), 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889. To demonstrate such reasonable suspicion, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." Terry, at 21. The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances. State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus, certiorari denied (1988), 488 U.S. 910, 109 S.Ct. 264,102 L.Ed.2d 252.
{¶ 17} In its order denying Appellant's motion to suppress, the trial court made detailed findings of fact. Specifically, the court found that controlled buys of illegal drugs had previously been executed at the apartment under surveillance, most recently within the two or three weeks preceding the date of Appellant's arrest. In addition, the court found that Akron police had stopped persons leaving the apartment in the past, and several were arrested on outstanding warrants. The court also found that prior to the evening of Appellant's arrest, police received information that a large quantity of cocaine had arrived at the apartment.
{¶ 18} The court further found that on the night of Appellant's arrest, Detective Dalvin Horton observed two well-dressed people exit the apartment and drive away in a late model white Monte Carlo. One of the individuals was carrying a plastic bag. According to the court's findings, Detective Horton considered the presence of the newer Monte Carlo and its well-dressed occupants to be unusual.
{¶ 19} The court determined that a number of older vehicles were stopped in the area, whose occupants entered the apartment and left after a brief stay. The court also found that prior to the departure of the Monte Carlo, there was heavy foot traffic in and out of the apartment, and most of the people stayed inside for only a few minutes. The court found that traffic in and out of the apartment greatly diminished after Appellant left the area.
{¶ 20} Based on his observations, Detective Horton suspected that the occupants of the Monte Carlo were engaged in drug-related activity. The detective then radioed uniformed Detectives Brian Callahan and Alan Jones and directed them to stop the vehicle.
{¶ 21} Our review of the record indicates that the trial court's factual findings are supported by the testimony presented at the hearing on the motion to suppress. Moreover, Appellant has not challenged the factual findings of the trial court on appeal; rather, Appellant has maintained that the evidence adduced at the suppression hearing failed to establish that the officers had a reasonable suspicion that he was engaged in criminal activity at the time of the traffic stop.
{¶ 22} "Since Terry, courts have struggled with the elusive concept of what comprises a reasonable suspicion that someone is engaging in, or about to engage in, criminal activity." State v. Andrews (1991),57 Ohio St.3d 86, 87, certiorari denied (1991), 501 U.S. 1220,111 S.Ct. 2833, 115 L.Ed.2d 1002. In making this determination, an officer's objective and particularized suspicion of criminal activity must be based on the totality of the surrounding circumstances. Id.
{¶ 23} In Bobo, 37 Ohio St.3d 177, the Ohio Supreme Court reviewed seven factors relied upon by the state in its argument that police had reasonable suspicion to conduct an investigative stop of the appellee. Specifically, the court concluded that the prevalence of drug activity in the area, the time of day, the level of experience of the arresting officer, an officer's knowledge of how drug transactions occur, an officer's observation of suspicious movements by the suspects, and an officer's history of recovering weapons or drugs after similar movements can, in their totality, produce a reasonable suspicion of criminal activity. Id. at 179-180.
{¶ 24} While review of whether an officer had a reasonable suspicion of criminal activity is highly dependent on the facts of each case, numerous courts have applied the framework set forth in Bobo and concluded that reasonable suspicion was present under circumstances similar to those in the case at bar. In State v. Miller (1997),117 Ohio App.3d 750, the court applied the Bobo analysis and determined that the following facts supported the conclusion that the officer had a reasonable suspicion of criminal activity:
{¶ 25} "[The officer] testified at the suppression hearing that he had been a patrolman for four years, that he had conducted many surveillances similar to the one in this case, and that he had previously made arrests for possession of drugs. In relation to the Argonne Drive residence, [the officer] further testified that, over the past six months, a number of arrests for drugs had been made which stemmed from the residence, and, that the department had received numerous complaints both from the neighbors and the owner that the residence was being used as a `crack' house. [The officer] stated that typically drug transactions occur when numerous vehicles come and go from a residence, especially at odd hours; when an occupant from a vehicle goes into the residence but stays for only a few minutes; and, finally, when the vehicle immediately leaves upon the return of the individual. [The officer] also testified that a succession of cars had repeated this particular procedure during his term of surveillance prior to appellant's arrest at 3:15 A. M." Id. at 758.
{¶ 26} In State v. Grimes (Nov. 1, 1996), 2nd Dist. No. 15756, 1996 Ohio App. LEXIS 4750, the arresting officer observed the appellee engaged in activity consistent with activities of known participants in drug transactions at the same location, which had yielded between fifteen and twenty arrests over a three or four month period. "Specifically, a vehicle with a driver and a passenger pulled up to the apartment building in the middle of the night, one of the occupants left the vehicle and entered the building, returning two to three minutes later, and then the vehicle and its occupants began to leave the area." Id. at *10. The court held that, in light of the arresting officer's experience, these circumstances were sufficient to produce a reasonable suspicion that the occupants of the vehicle were engaged in a drug transaction. Id.
{¶ 27} Likewise, in State v. Harrington (July 26, 1999), 5th Dist. No. 1998CA00300, 1999 Ohio App. LEXIS 3460, two officers were patrolling an area of heavy drug activity as a result of an informant's tip that there was an increase in drug transactions at that location. Id. at *7. The court stated:
{¶ 28} "Appellant was observed by the two officers walking into a suspected crack house at approximately 2:00 A.M. and exiting only two to three minutes later, which Officer Morris testified is consistent with the time it takes to engage in a drug transaction. The car that had dropped appellant off, which contained two other occupants, was parked one block down the street with its engine and lights off. Just prior to appellant's arrival, the officers had observed two hand-to-hand exchanges between known drug users and/or dealers at the suspected crack house. Clearly, the above facts, taken together with any reasonable inferences from the same, reasonably warranted the officers' suspicion of criminal drug activity." Id. at *7-8.
{¶ 29} In the case sub judice, both Detectives Callahan and Horton testified that police had conducted multiple controlled buys of illegal drugs from the apartment in the past several weeks. Detective Horton also testified: "I received a call earlier from an information source telling me that there was a large quantity of crack cocaine at the location."
{¶ 30} In addition to his testimony regarding intelligence of past drug-related activity at the apartment, and his information that a large quantity of crack cocaine was at the location, Detective Horton testified that he observed "short term traffic, which is common for a drug house." Detective Horton also concluded that the appearances of the people entering and leaving the apartment was consistent with drug trafficking: "[S]ome people arrived in rather beat up cars, typical of your drug abusers. [Appellant and the passenger] exited the location * * * dressed more in the more modern style, more of a hip-hop style, which is common for our drug sellers. * * * One was carrying a bag, that caught my attention, like almost like a little grocery bag."
{¶ 31} Detective Horton also derived significance from the contrast between the appearance of the Monte Carlo driven by Appellant and the rest of the cars present at the location:
{¶ 32} "This car stood out from all the other cars. It had — from people who had been there, they were driving raggedy cars, little ragged pickup trucks; and this was a newer looking car. * * * The fact that these cars were showing up, these raggedy cars, these people dressed — more unkempt people, would signify that they were drug abusers. And this particular car would give an indication that this car was one that might be used by a drug — by a drug dealer."
{¶ 33} Detective Horton also testified that his decision to direct other officers in the area to stop Appellant's car was based "[o]n my experience, my knowledge of this location as being a drug house, based on the fact that we had made purchases from it, my nine years' experience of watching such houses and watching such activity."
{¶ 34} While none of the facts described by the detectives is dispositive, we conclude that, when considered in their totality, the circumstances surrounding Appellant's presence at the apartment are sufficient to articulate a reasonable suspicion that Appellant was engaged in drug-related activity. In particular, these circumstances include the detectives' testimony that controlled buys of illegal drugs had recently been conducted at the apartment; Detective Horton's testimony that he received information about the presence of a large quantity of crack cocaine at the apartment; the detective's testimony as to his observations of Appellant's activities at the apartment; the detective's descriptions of the other foot and vehicle traffic to and from the apartment on the night of Appellant's arrest; and Detective Horton's testimony as to his personal experience with the way these circumstances were consistent with drug transactions.
{¶ 35} Once Detective Horton was possessed of a reasonable suspicion that Appellant was engaged in criminal activity, the officers acting on such reasonable suspicion could lawfully conduct an investigative stop of Appellant's vehicle. See Maumee v. Weisner (1999),87 Ohio St.3d 295, 297, citing United States v. Hensley (1985),469 U.S. 221, 231, 105 S.Ct. 675, 83 L.Ed.2d 604. "[W]here an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity." (Emphasis sic.) Weisner, 87 Ohio St.3d at 298. Detectives Callahan and Jones, who executed the investigative stop of Appellant, were not required to have specific knowledge of the facts justifying the stop, and properly relied on Detective Horton's radio dispatch instructing them to stop Appellant.
{¶ 36} Appellant has also contended that the search of Appellant's person after the traffic stop was unconstitutional because it exceeded the bounds of the "frisk" for weapons sanctioned by Terry and its progeny. Appellant has contended that the detective who apprehended him had no justifiable belief that he was armed or dangerous. In addition, Appellant has argued that the detective exceeded his authority to conduct a pat-down search of Appellant's outer clothing by reaching into his pocket and removing a bag of drugs. In support of this assertion, Appellant has directed us to testimony by the detective that the drugs removed during the search did not feel like a gun or a weapon, but rather felt like "some sort of mooshy item, plastic."
{¶ 37} Appellant's arguments regarding the propriety and scope of pat-down searches are misplaced, however, because the contraband discovered subsequent to the traffic stop was found during the course of a lawful search incident to his arrest. In its order denying the motion to suppress, the trial court found that after Detective Horton radioed to other uniformed detectives to stop Appellant's vehicle, Detectives Jones and Callahan positioned their cruisers behind the Monte Carlo. The court found that when his cruiser was approximately one car length behind the Monte Carlo, Detective Jones activated his lights and siren. According to the court's findings, Appellant did not immediately stop his vehicle; rather, he proceeded through a parking lot at speeds of approximately thirty to forty miles per hour. The court found that Appellant cut through the lot of another business, onto a street in front of oncoming traffic, and into another parking lot before finally coming to a stop. The court determined that Appellant was then arrested for failure to comply with an order or signal of a police officer and possession of cocaine.
{¶ 38} The detectives' testimony at the suppression hearing supports the trial court's findings. Detective Jones, who was operating the cruiser behind Appellant's vehicle, testified that Appellant did not immediately bring the Monte Carlo to a halt after the detective activated his lights and sirens. Detective Jones stated that he activated his lights and sirens just as Appellant pulled into a parking lot, but Appellant continued through parking lots and in front of oncoming traffic, reaching speeds of between thirty and forty miles per hour. Detective Callahan, who was in a second cruiser immediately behind Detective Jones' patrol car, also testified that he observed Appellant drive through parking lots and across streets in spite of the lights and sirens operating on Detective Jones' cruiser. Detective Callahan further testified that when Appellant's vehicle finally came to a rest, he approached Appellant while Detective Jones pursued the passenger who fled on foot. Detective Callahan stated that he ordered Appellant out of the car, handcuffed him, and placed him under arrest for "[f]ailure to comply, being that we attempted to stop him quite a distance away." Detective Callahan testified that once Appellant was out of the car and handcuffed, he searched Appellant and discovered a plastic bag containing crack cocaine in his coat pocket.
{¶ 39} "[A] full search of the person incident to a lawful custodial arrest is not only an exception to the warrant requirement of the Fourth Amendment but is also a `reasonable' search under that amendment." State v. Mathews (1976), 46 Ohio St.2d 72, 74, citing UnitedStates v. Robinson (1973), 414 U.S. 218, 94 S,.Ct. 467, 38 L.Ed.2d 427. "Pursuant to their authority to conduct a search incident to arrest, police are authorized to conduct a full search of the arrestee's person and the area within his immediate control[.]" State v. Myers (1997),119 Ohio App.3d 376, 380, citing Chimel v. California (1969), 395 U.S. 752,763, 89 S.Ct. 2034, 23 L.Ed.2d 685.
{¶ 40} R.C. 2921.331(B) provides: "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." The testimony adduced at the suppression hearing established that the officers pursuing Appellant had probable cause to arrest him for violating this statute when Appellant finally brought the Monte Carlo to a stop. Absent certain aggravating circumstances, a violation of R.C. 2921.331(B) is a misdemeanor of the first degree. R.C. 2821.331(C)(3). Consequently, Detective Callahan properly discovered the contraband in Appellant's pocket during the course of a lawful search incident to the arrest of Appellant for failure to comply with an order or signal of a police officer. See, e.g., Mathews,46 Ohio St.2d at 75-76 (concluding that officer's search of appellee's purse was lawful where the search was incident to the arrest of the appellee for a first degree misdemeanor).
{¶ 41} The trial court did not err in denying Appellant's motion to suppress. Appellant's first assignment of error is without merit.
 Assignment of Error Number Two {¶ 42} "[APPELLANT] WAS DENIED DUE PROCESS OF LAW WHEN THE COURT WOULD NOT ALLOW A SHORT CONTINUANCE SO THAT CO-COUNSEL COULD ALSO REPRESENT [APPELLANT]."
{¶ 43} In his second assignment of error, Appellant has argued that the trial court erred in denying his motion for a continuance of the trial so that Appellant could secure the assistance of co-counsel. Appellant has contended that the court's denial of his motion for a continuance violated his constitutional right to due process of law.
{¶ 44} The decision to grant or deny a continuance "is a matter that is entrusted to the broad, sound discretion of the trial judge."State v. Unger (1981), 67 Ohio St.2d 65, syllabus. "Abuse of discretion" connotes more than a mere error in judgment; it implies an attitude on the part of the court that is arbitrary, unreasonable, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157. Moreover, "there are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."Unger, 67 Ohio St.2d at 67, quoting Ungar v. Sarafite (1964), 376 U.S. 575,589, 84 S.Ct. 841, 11 L.Ed.2d 921.
{¶ 45} When evaluating a motion for a continuance, the trial court should balance a number of factors, including:
{¶ 46} "[T]he length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." Unger,67 Ohio St.2d at 67-68.
{¶ 47} In the case sub judice, Appellant appeared on the day of the trial with his counsel, and orally requested "that the Court grant * * * a couple days in which to get co-counsel to work on the case." The court denied the request, stating: "I am not going to do that. * * * It has just been too much too long. We are going to go ahead with the trial."
{¶ 48} Although the court did not elaborate on its ruling, Appellant has failed to show that the trial court either abused its discretion or denied Appellant due process of law by denying the request for a continuance. Our review of the record shows that Appellant had been continuously represented by counsel throughout the proceedings in the court below. While the trial court earlier allowed one of Appellant's attorneys to withdraw, counsel who appeared with Appellant on the day of trial had been representing Appellant at least since November 16, 2001, when counsel filed Appellant's written waiver of his speedy trial rights. The trial court had previously granted one continuance at Appellant's request, and another requested by the state due to the unavailability of one of the state's witnesses on the scheduled trial date. In addition, the trial court was twice required to postpone the trial due to Appellant's failure to appear, and capias warrants had to be issued for the arrest of Appellant on both occasions. On the day of the trial when Appellant requested the continuance, the witnesses were available and a jury panel was outside the courtroom awaiting the commencement of voir dire proceedings.
{¶ 49} In light of all the foregoing circumstances, the trial court did not abuse its discretion in denying the motion for a continuance of the trial. Appellant's second assignment of error is not well taken.
 Assignment of Error Number Three {¶ 50} "[APPELLANT] WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DID NOT DEFINE FOR THE JURY THE STATUTORY DEFINITION OF A CONTROLLED SUBSTANCES [SIC] INVOLVED."
{¶ 51} In his third assignment of error, Appellant has argued that the trial court erred in failing to instruct the jury on the definitions of certain controlled substances. Appellant has contended that the indictment charged Appellant with possession of crack cocaine, but the evidence presented at trial did not distinguish between cocaine and crack cocaine. Appellant has maintained that the different penalties applicable to the crimes of possession of cocaine and possession of crack cocaine made the identity of the controlled substance at issue an element of the crime. According to Appellant, the jury was therefore not informed as to the necessary elements of the offense, and the omission of the definitions of cocaine and crack cocaine from the jury instructions denied Appellant due process of law.
{¶ 52} Crim.R. 30(A) provides: "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict[.]" The record shows that Appellant did not object to the jury instructions at any time. By failing to object at trial or to request specific instructions, Appellant has waived all but plain error. State v. Coley
(2001), 93 Ohio St.3d 253, 266; see, also, State v. Underwood (1983),3 Ohio St.3d 12, syllabus ("The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise.").
{¶ 53} Accordingly, Appellant has maintained that this Court should recognize the omissions from the jury instructions as plain error. Crim.R. 52(B) provides for the notice of plain errors: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Ohio Supreme Court has interpreted the "affecting substantial rights" aspect of the plain error analysis to mean that the court's error must have affected the outcome of the trial. State v. Barnes, 94 Ohio St.3d 21, 27,2002-Ohio-68.
{¶ 54} In the case sub judice, Appellant has failed to establish that the outcome of the trial would have been different if the court had included the definitions of cocaine and crack cocaine in its instructions to the jury. For purposes of R.C. Chapter 2925, cocaine is defined as any of the following:
 {¶ 55} "(1) A cocaine salt, isomer, or derivative, a salt of a cocaine isomer or derivative, or the base form of cocaine;
 {¶ 56} "(2) Coca leaves or a salt, compound, derivative, or preparation of coca leaves, including ecgonine, a salt, isomer, or derivative of ecgonine, or a salt of an isomer or derivative of ecgonine;
 {¶ 57} "(3) A salt, compound, derivative, or preparation of a substance identified in [R.C. 2925.01(X)(1) or (2)] that is chemically equivalent to or identical with any of those substances, except that the substances shall not include decocanized coca leaves or extraction of coca leaves if the extractions do not contain cocaine or ecgonine." R.C. 2925.01(X).
{¶ 58} Crack cocaine, on the other hand, "means a compound, mixture, preparation, or substance that is or contains any amount of cocaine that is analytically identified as the base form of cocaine or that is in a form that resembles rocks or pebbles generally intended for individual use." R.C. 2925.01(GG).
{¶ 59} Count one of the first indictment against Appellant charged him with possession of crack cocaine. That indictment was later amended to include a specification that Appellant was a major drug offender as a result of his "having possessed at least one hundred grams of Crack Cocaine[.]" At trial, Detective Callahan testified that after he arrested Appellant for failing to comply with the order or signal of a police officer, he recovered from Appellant's pocket a plastic bag containing what appeared to be crack cocaine. The detective identified the bag and its contents at trial as the crack cocaine recovered from Appellant's pocket.
{¶ 60} Mr. Mike Velten, of the Ohio Bureau of Criminal Identification and Investigation, also testified at trial. Mr. Velten testified that he conducted a series of tests on the "white rock-like substance" recovered from Appellant by Detective Callahan. Mr. Velten stated that he positively identified the presence of cocaine in the substance as the result of a gas chromatograph mass spectrometer ("GCMS") test, but cautioned that the GCMS test "will not identify the difference between powder cocaine and base cocaine, cocaine base." Mr. Velten further testified:
{¶ 61} "Cocaine hydrochloride is cocaine. Cocaine base is referred to as crack cocaine. So the other instrument I had to use to make that determination is called an infrared spectrophotometer. I then took a sample of that, placed it in the spectrophotometer, and it indicated to me cocaine base was inside[.] * * * Once the analysis is then completed * * * the regular report was prepared indicating that 107.84 grams crack cocaine base — or crack cocaine was present."
{¶ 62} The prosecutor then asked: "Based upon your experience and expertise, is it your opinion that that item before you is in fact crack cocaine, a Schedule Two controlled substance?" Mr. Velten responded: "Yes, sir, it is." The substance Mr. Velten identified as crack cocaine was admitted into evidence, and was presented to the jury as an exhibit. Appellant did not object to any characterization of the substance as crack cocaine throughout the trial, nor did he challenge Mr. Velten's conclusion on cross-examination. Appellant's counsel asked Mr. Velten only three questions on cross-examination, all of which related to the chain of custody of the physical evidence. When Appellant testified, he did not dispute that the substance found in his coat pocket was crack cocaine. Rather, Appellant's defense was that he picked up someone else's coat on the way out of the apartment Appellant's apparent strategy was to establish reasonable doubt on the element of whether he knowingly
possessed the controlled substance.
{¶ 63} The second indictment charged Appellant with trafficking in and possession of cocaine. At trial, Officer Tim Harvey testified that he stopped the vehicle in which Appellant was a passenger on November 2, 2001. The officer stated that a parcel containing over thirty individually wrapped bags of cocaine was found in the console of the car. Mr. Velten testified that he conducted tests of the substance recovered from the car, which he identified as powder cocaine. This cocaine was also admitted into evidence and submitted to the jury.
{¶ 64} Appellant admitted that the drugs found in the car on this occasion belonged to him, reiterating what he told police on the scene when they apprehended him: "I put the drugs in there. When they come out the car and seen they had the drugs, I said everything in the car is mine. I am not going to let my friends go down for what's mine. I told them, `Anything you find in the car is mine.'"
{¶ 65} Appellant's defense strategies and theories of the case had nothing to do with the differences between the statutory definitions of cocaine and crack cocaine. The uncontroverted testimony of the detectives and Mr. Velten clearly established that the substance recovered from Appellant on January 17, 2001, was crack cocaine, and the drugs Appellant admitted to possessing on November 2, 2001, was powder cocaine .Therefore, we conclude that the trial court's omission from the jury instructions of the statutory definitions of these controlled substances did not affect the outcome of the trial. Appellant's third assignment of error must fail.
 Assignment of Error Number Four {¶ 66} "[APPELLANT] WAS DENIED DUE PROCESS OF LAW WHEN THE COURT MISSTATED THE LAW CONCERNING POSSESSION OF A CONTROLLED SUSBTANCE."
 Assignment of Error Number Five {¶ 67} "[APPELLANT] WAS DENIED DUE PROCESS OF LAW WHEN THE COURT USURPED A JURY INSTRUCTION BY DECLARING CERTAIN FACTS AS PROVEN."
{¶ 68} In his fourth assignment of error, Appellant has argued that the trial court erred in advising the jury panel prior to voir dire by counsel: "Now, in Ohio, cocaine is an illegal substance. As a matter of law, it is illegal to possess." In his fifth assignment of error, Appellant has contended that the trial court usurped the jury's factfinding function by instructing the jury that "as a matter of law, crack cocaine is a Schedule Two controlled substance," and that "as a matter of law the officer's signal is a lawful order." Appellant has contended that these statements predisposed the jury to conclude that Appellant was guilty of the indicted charges, in violation of his due process rights.
{¶ 69} Our review of the record, however, shows that Appellant did not object to these instructions at the time they were given to the jury. As a consequence, Appellant has waived all but plain error. See Crim.R. 30(A); Underwood, 3 Ohio St.3d 12, syllabus. Appellant has not argued that the outcome of the trial would have been different had the trial court not included the foregoing statements in its charge to the jury. We therefore will not further address Appellant's arguments under his fourth and fifth assignments of error.
 Assignment of Error Number Six
{¶ 70} "[APPELLANT] WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL."
{¶ 71} In his sixth assignment of error, Appellant has argued that his counsel rendered constitutionally defective assistance during the proceedings below. Appellant has asserted five components under this assignment of error; we have rearranged and consolidated certain of these arguments to facilitate our analysis, but we will address each point raised by Appellant.
{¶ 72} A two-pronged test must be satisfied to determine that the right to effective assistance of counsel has been violated:
{¶ 73} "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.
{¶ 74} An appellant's demonstration of prejudice requires proof that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258,111 L.Ed.2d 768. This Court must also consider "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. The burden of proof is borne by the defendant, and he must overcome the strong presumption of the adequacy of counsel's performance and that counsel's action might be sound trial strategy. State v. Smith (1985),17 Ohio St.3d 98, 100.
 "A. DEFENSE COUNSEL DID NOT SEEK A SEPARATE TRIAL FOR THE TWO INDICTMENTS." "B. "COUNSEL IMPROPERLY ADMITTED [APPELLANT'S] GUILT OF [APPELLANT] [SIC]."
{¶ 74} Appellant has first argued that he was denied the effective assistance of counsel by counsel's failure to seek a separate trial of the two indictments. Appellant has contended that his admission that he possessed cocaine with respect to the charge in the second indictment diminished his credibility before the jury when he denied knowingly possessing crack cocaine, as charged by the first indictment. Appellant has also maintained that his counsel was ineffective because counsel conceded to the jury in Appellant's closing argument that Appellant was guilty of the possession of cocaine, as charged in the second indictment.
{¶ 75} Appellant has failed to show that the decision to try the cases together and the concession during closing argument amount to constitutionally deficient representation by counsel. Faced with an ineffective assistance claim under similar circumstances, the Ohio Supreme Court concluded:
{¶ "76} Appellant overlooks the fact that he had confessed to performing most of the acts of which he was accused. That confession made it very difficult for his attorneys to deny that the [illegal conduct] had occurred, or to present any type of viable defense. It is `logical trial strategy' to contest the most serious charges and to concede those that are supported by `indisputable evidence and credible testimony.'" (Citations omitted.) State v. Phillips (1995), 74 Ohio St.3d 72, 85.
{¶ 77} It is evident from the record that Appellant's trial strategy was to take responsibility for the lesser offense of possession of cocaine, in an attempt to bolster his credibility for his contention that he did knowingly possess the crack cocaine as charged by the first indictment. At trial, Detective Callahan testified that when he and other officers conducted the traffic stop of Appellant on November 2, 2001, Appellant stated that anything found in the car was his. Appellant also testified that he made these statements during the traffic stop, and at trial Appellant again took responsibility for the presence of the cocaine in the vehicle. Appellant's closing argument also evidences this strategy:
{¶ 78} "So when [Appellant] says to you — and I believe what he is saying, ladies and gentlemen. He acknowledges that he had possession of those drugs on [November 2, 2001]. But he also comes in and tells you that he did not have knowledge that those drugs were in that coat at the time that he picked it up [on January 17, 2001]."
{¶ 79} "Of course, many trial tactics may be questioned after an unfavorable result. A fair assessment of attorney performance requires us to eliminate the distorting effect of hindsight." State v. Post (1987),32 Ohio St.3d 380, 388, certiorari denied (1988), 484 U.S. 1079,108 S.Ct. 1492, 99 L.Ed.2d 719. It is apparent that counsel's strategy was to try the charges in both indictments together at a single trial, and take responsibility for one offense of which there was overwhelming evidence of guilt in an effort to bolster Appellant's credibility when contesting another, more serious charge. This Court will not second-guess counsel's decisions regarding trial strategy. See State v. Hartman (2001),93 Ohio St.3d 274, 300.
 "D. DEFENSE COUNSEL FAILED TO REQUEST AN INSTRUCTION CONCERNING THE USE OF PRIOR CONVICTIONS."
{¶ 80} Appellant has also argued that counsel was ineffective for failing to request a jury instruction regarding questions asked of Appellant and one of Appellant's witnesses about prior convictions. Appellant has maintained that counsel should have requested an instruction limiting the jury's use of the evidence about prior convictions to the credibility and weight of the witnesses' testimony.
{¶ 81} Again, however, Appellant has failed to rebut the presumption that counsel's actions were anything but sound trial strategy. See State v. Smith (1991), 75 Ohio App.3d 73, 75-76. "Defense counsel may have declined to request a limiting instruction regarding [the witnesses'] prior convictions * * * out of fear that, if such an instruction was given, the prior convictions would be once again called to the jury's attention." State v. Smith (Aug. 20, 1999), 5th Dist. No. 98-CA-6, 1999 Ohio App. LEXIS 3947, at *20. Counsel was therefore not ineffective for failing to request a limiting instruction.
 "C. DEFENSE COUNSEL FAILED TO FILE A MOTION TO SUPPRESS CONCERNING THE STOP AND SEIZURE ON NOVEMBER 2, 2001."
{¶ 82} Appellant has next argued that his trial counsel was deficient for failing to file a motion to suppress the evidence obtained during the traffic stop on November 2, 2001, which led to the charges in the second indictment. Appellant has contended that police stopped the vehicle in which he was a passenger on that date without a warrant and without probable cause to arrest. According to Appellant, the trial court would have excluded this evidence obtained in violation of his constitutional rights if counsel had filed a motion to suppress.
{¶ 83} The Sixth Amendment does not require defense counsel to file a motion to suppress in every case. State v. Madrigal (2000),87 Ohio St.3d 378, 389, certiorari denied (2000), 531 U.S. 838,121 S.Ct. 99, 148 L.Ed.2d 58. However, the failure to file a motion to suppress which possibly could have been granted and implicated matters critical to the defense can constitute ineffective assistance of counsel, if such failure prejudices the defendant. State v. Garrett
(1991), 76 Ohio App.3d 57, 63. "Where the record contains no evidence which would justify the filing of a motion to suppress, the [defendant] has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." State v. Gibson (1980),69 Ohio App.2d 91, 95.
{¶ 84} In the case sub judice, the record contains very little evidence regarding the officers' justification for initiating the traffic stop of the vehicle in which Appellant was arrested on November 2, 2001. Detective Callahan testified that the SNUD unit was conducting surveillance of an apartment at 928 ½ Nathan Avenue in response to complaints of drug activity. Officer Harvey, one of the officers who initiated the traffic stop of the vehicle on November 2, testified that one of the undercover officers had reported over the radio the following: the vehicle had pulled into the driveway at the Nathan Street address, a male exited the rear of the car and went into the house and returned to the vehicle after a short period of time, and the car drove away.
{¶ 85} Not surprisingly, the record contains little beyond this rough sketch of facts, because there was no need to develop this evidence in greater detail at trial. Thus, Appellant has not directed us to evidence in the record that would justify the filing of a motion to suppress. "It is impossible for this court to determine on a direct appeal from a conviction whether an attorney was ineffective in his representation of a criminal defendant, where the allegation of ineffectiveness is based on facts dehors the record." Gibson,69 Ohio App.2d at 95. In Gibson, the court specifically rejected the notion that a defendant is denied the effective assistance of counsel where counsel fails to file a motion to suppress that could arguably dispose of the charge against the defendant, without any inquiry into whether the record disclosed arguable grounds for suppression of the evidence. Id. at 94-95. The court concluded that under such a standard, "[a] defense attorney could create reversible error simply by failing to file a motion to suppress; if his client is convicted in the first trial, he is guaranteed another trial because the conviction would be reversed on the ground of ineffective assistance of counsel." Id. at 94.
{¶ 86} The record does not contain any evidence justifying a motion to suppress based on the initiation of the traffic stop on November 2, 2001. Accordingly, Appellant has not met his burden of showing counsel's ineffective assistance in failing to file a motion to suppress the evidence discovered as a result of the stop.
"E. DEFENSE COUNSEL FAILED TO REQUEST A CONTINUANCE OR MISTRIAL."
{¶ 87} Finally, Appellant has asserted that counsel's representation was constitutionally deficient because counsel failed to request either a continuance or a mistrial when the sole black juror in Appellant's trial became ill and was excused. Appellant, a black male, has argued that the absence of the black juror denied Appellant a fair trial before an impartial jury that was representative of the community.
{¶ 88} During testimony by the first witness at trial, the sole black juror on the panel became ill and had to be excused. The court briefly conferred with counsel, and indicated its intent to excuse the sick juror and replace her with the only selected alternate. During that conference, Appellant's trial counsel raised the issue of the jury's racial composition: "Your Honor, as the jury is comprised now, that means there are no African Americans on the jury, and I think my client has a right to have somebody there as a representative." Counsel did not press the objection after it was pointed out that counsel for Appellant excused the only other black juror from the pool of potential jurors during voir dire. While it is true that counsel did not request a continuance or move for a mistrial, nothing in the record indicates that the court would have been inclined to grant either motion. An objectively reasonable representation of Appellant did not require that counsel do more than he did in bringing the racial composition of the jury to the attention of the court.
{¶ 89} For all the foregoing reasons, Appellant has failed to show that he was denied the effective assistance of counsel at trial. Appellant's sixth assignment of error is not well taken.
 Assignment of Error Number Seven {¶ 90} "[APPELLANT] WAS DENIED DUE PROCESS OF LAW WHEN HE WAS FOUND TO BE A MAJOR DRUG OFFENDER BY THE COURT WITHOUT A FINDING BY THE JURY."
{¶ 91} In his seventh assignment of error, Appellant has argued that the trial court erred in finding him to be a major drug offender, because that determination is a question of fact that due process of law requires to be made by a jury. Appellant has relied on Apprendi v. NewJersey (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, for the proposition that he cannot constitutionally be found to be a major drug offender without a jury's determination that he is guilty beyond a reasonable doubt of every element of the offense charged. See Apprendi,530 U.S. at 477.
{¶ 92} R.C. 2929.01(X) defines the term "major drug offender" as "an offender who is convicted of or pleads guilty to the possession of * * * any drug, compound, mixture, preparation, or substance that consists of or contains * * * at least one hundred grams of crack cocaine[.]" This definition is specifically incorporated into the provisions for the indictment of an offender as a major drug offender found at R.C. 2941.1410. See R.C. 2941.1410(C). R.C. 2941.1410(A) further provides that, subject to certain exceptions, the determination that an offender is a major drug offender is precluded unless the indictment or information charging the defendant specifies that he is a major drug offender. R.C. 2941.1410(B) establishes that "[t]he court shall determine the issue of whether an offender is a major drug offender."
{¶ 93} In the instant case, the first indictment charging Appellant, as amended, included a specification that Appellant was a major drug offender on the ground that he possessed at least one hundred grams of crack cocaine. In its instruction to the jury, the trial court charged that if the jury found Appellant guilty of possession as charged in the indictment, the jury would "separately decide whether or not the crack cocaine was equal to or exceeds 100 grams."
{¶ 94} On the verdict form relevant to the indictment for possession of crack cocaine, the jury specifically found that Appellant was guilty of possessing crack cocaine "in an amount equal to or exceeding 100 grams in weight." At that point, Appellant was a major drug offender pursuant to the definition at R.C. 2929.01(X), as well as R.C. 2925.11(C)(4)(f), which provides: "If the amount of the drug involved [in a violation of R.C. 2925.11(A)] * * * equals or exceeds one hundred grams of crack cocaine, possession of cocaine is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree and may impose an additional mandatory prison term prescribed for a major drug offender under [R.C.2929.14(D)(3)(b)]."
{¶ 95} The only factual findings relevant to this determination were made by the jury, pursuant to the procedure set forth at R.C.2941.1410. State v. McCoy (Nov. 9, 2001), 1st Dist. Nos. C-000659, C-000660, 2001 Ohio App. LEXIS 5031, at *23-24. The court's determination that Appellant was a major drug offender for purposes of sentencing therefore did not violate Appellant's constitutional right to due process of law. Id. at *24. Appellant's seventh assignment of error must fail.
 Assignment of Error Number Eight {¶ 96} "[APPELLANT] WAS DENIED DUE PROCESS OF LAW WHEN HE WAS SENTENCED TO TEN (10) YEARS OF IMPRISONMENT FOR POSSESSION OF ALLEGED CRACK COCAINE."
{¶ 97} In his eighth assignment of error, Appellant has argued that the trial court erred in imposing a sentence of ten years for his conviction for possession of crack cocaine. We decline, however, to address the merits of any of Appellant's arguments under this assignment of error.
{¶ 98} Appellant has first contended that the trial court erred by not instructing the jury on the statutory definitions of cocaine and crack cocaine, and otherwise failing to carefully distinguish between these controlled substances. Appellant has also asserted that the evidence presented did not authorize a finding that the substance found on Appellant's person on January 17, 2001, was crack cocaine. However, we disposed of these arguments when Appellant first raised them under his third assignment of error, and we are not inclined to revisit these same assertions here.
{¶ 99} Appellant has next maintained that his conviction for possession was only a felony of the second degree and did not require a mandatory ten-year term of imprisonment. In support of this assertion, Appellant has cited R.C. 2925.11(C)(3)(d). This provision, however, relates to convictions for possession of marihuana; Appellant was sentenced to a mandatory term of ten years imprisonment for possession of crack cocaine, pursuant to R.C. 2925.11(C)(4)(f).
{¶ 100} Appellant's remaining arguments present constitutional challenges to sentencing statutes that he did not raise at trial, and which he therefore did not properly preserve for appeal. "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which is apparent at the time of trial, constitutes a waiver of such issue * * * and therefore need not be heard for the first time on appeal." State v. Awan (1986), 22 Ohio St.3d 120, syllabus. Accordingly, we decline to further address Appellant's constitutional challenges.
 Assignment of Error Number Nine {¶ 101} "[APPELLANT] WAS DENIED DUE PROCESS OF LAW WHEN HE WAS SENTENCED TO CONSECUTIVE TERMS OF IMPRISONMENT WITHOUT ANY REQUIRED STATUTORY FINDING."
{¶ 102} In his ninth assignment of error, Appellant has argued that the trial court erred in sentencing him to consecutive terms of imprisonment without making the findings required by statute. This Court agrees.
{¶ 103} An appellate court may remand a matter on appeal for resentencing if it clearly and convincingly finds that the trial court's sentence is contrary to law. R.C. 2953.08(G)(2)(b). Clear and convincing evidence is evidence "which will produce * * * a firm belief or conviction as to the allegations sought to be established." State v.Eppinger, 91 Ohio St.3d 158, 164, 2001-Ohio-247, quoting Cross v.Ledford (1954), 161 Ohio St. 469, 477.
{¶ 104} The imposition of sentences in felony proceedings is governed by R.C. 2929.14. Specifically, R.C. 2929.14(E)(4) outlines the conditions under which a trial court may impose consecutive sentences. R.C. 2929.14(E)(4) provides:
{¶ 105} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]"
{¶ 106} R.C. 2929.14(E)(4) also requires a court imposing consecutive sentences to make a finding of at least one of the factors set forth at R.C. 2929.14(E)(4)(a) through (c). In addition, R.C.2929.19(B)(2)(c) requires the trial court to give its reasons for imposing consecutive sentences pursuant to R.C. 2929.14. See State v.Riggs (Oct. 11, 2000), 9th Dist. No. 19846, at 2. In Riggs this Court concluded that State v. Edmonson (1999), 86 Ohio St.3d 324, requires a court to use some language that is close, if not identical, to the statutory criteria when articulating its findings. Riggs, supra at 3.
{¶ 107} This Court's review of the transcript of the sentencing hearing and the journal entry of sentence shows that the trial court failed to make the findings required by statute. In its journal entry, the court found that (1) Appellant was not amenable to community control, (2) recidivism was likely, (3) anything less would demean the seriousness of the offense, and (4) prison is consistent with the purposes of R.C. 2929.11. These findings, however, are not the findings required by R.C. 2929.14(E)(4) for the imposition of consecutive sentences. "Obviously, without the finding[s] [themselves], the court also fails to provide the necessary `finding[s] that give its reasons.'" Edmonson, 86 Ohio St.3d at 329; R.C. 2929.19(B)(2)(c).
{¶ 108} R.C. 2953.08(G)(1) provides:
 {¶ 109} "If the sentencing court was required to make the findings required by * * * [R.C. 2929.14(E)(4)], * * * and if the sentencing court failed to state the required findings on the record, the court hearing an appeal under [R.C. 2953.08(A), (B), or (C)] shall remand the case to the sentencing court and instruct the sentencing court to state, on the record, the required findings."
{¶ 110} Because the trial court failed to make the requisite findings and reasons pursuant to R.C. 2929.14(E)(4) and R.C.2929.19(B)(2)(c), the court erred in imposing consecutive sentences. Appellant's ninth assignment of error is well taken.
 III
{¶ 111} Appellant's first through eighth assignments of error are overruled; his ninth assignment of error is sustained. The trial court's imposition of consecutive sentences is reversed, and the cause is remanded with instructions to the trial court to state, on the record, the findings and reasons required for the imposition of consecutive sentences.
{¶ 112} The Court finds that there were reasonable grounds for this appeal.
{¶ 113} We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
{¶ 114} Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Exceptions.
BAIRD, J. CONCUR